No. 18-12147-P

In the

# United States Court of Appeals
## for the Eleventh Circuit

---

Willie James Pye,

*Petitioner-Appellant,*

v.

Warden, Georgia Diagnostic Prison

*Respondent-Appellee.*

---

On Appeal from the United States District Court for the
Northern District of Georgia, Newnan Division.
No. 3:13-CV-0119 — Timothy C. Batten, Sr., *Judge*

---

## APPELLEE'S PETITION FOR REHEARING EN BANC

---

Christopher M. Carr
*Attorney General of Georgia*
Andrew A. Pinson
*Solicitor General*
Beth A. Burton
*Deputy Attorney General*
Sabrina D. Graham
*Senior Asst. Attorney General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3239
sgraham@law.ga.gov
Counsel for Respondent-Appellee

Pye v. GDCP Warden, No. 18-12147

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

1) Bailey, Jr., John H., State Habeas Corpus Judge, Superior Court of Butts County;

2) Batten, Sr., Timothy C., Federal Habeas Corpus Judge, U.S. District Court, Northern District of Georgia;

3) Benton, S. Jill, Federal Habeas Counsel for Petitioner;

4) Broder, G. Marie, District Attorney;

5) Burton, Beth, Deputy Attorney General, Counsel for Respondent;

6) Carr, Christopher M., Attorney General, Counsel for Respondent;

7) Dunn, Thomas, State Habeas Counsel for Petitioner;

8) Ford, Benjamin, Warden, Respondent;

9) Graham, Sabrina, Senior Assistant Attorney General, Counsel for Respondent;

10) Hiatt, Daniel, Assistant District Attorney;

11) Kammer, Brian, State Habeas Counsel for Petitioner;

12) McBroom, William T., Former District Attorney;

13)  Mostiler, Johnny, Trial and Appellate Counsel for Petitioner;

14)  Pye, Willie James, Petitioner;

15)  Singh, Channell, Assistant Attorney General, Counsel for Respondent;

16)  Stork, Gretchen, Federal Habeas Counsel for Petitioner;

17)  Vosburg-Casey, Amy, State Habeas Counsel for Petitioner;

18)  Whalen, Jr., Andrew J., Trial Judge, Superior Court of Spalding County; and

19)  Yarbrough, Alicia Lynn, Victim (deceased).


/s/ *Sabrina D. Graham*
Sabrina D. Graham

## STATEMENT REGARDING EN BANC REVIEW

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court:

*Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770 (2011); *Shinn v. Kayer*, __ U.S. __, 141 S. Ct. 517 (2020); *Mays v. Hines*, __ U.S. __, 141 S. Ct. 1145 (2021); *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335 (11th Cir. 2019), *cert. denied*, *Meders v. Ford*, __ U.S. __, 140 S. Ct. 394 (2019).

# TABLE OF CONTENTS

**Page**

Statement Regarding En Banc Review ............................................. i

Table of Authorities .................................................................. iii

Statement of Issue ...................................................................... 1

Statement of the Case ................................................................ 2

    A.  Facts of the Crimes ............................................................ 2

    B.  Proceedings Below ............................................................... 4

Reasons to Grant Rehearing En Banc ........................................... 6

The panel's selective, grading-papers approach to its review of
    the state habeas court's prejudice decision under AEDPA
    conflicts with Supreme Court and circuit precedent. .......... 6

    A.  The panel's selected unreasonableness conclusions
        ignore reasons and evidence supporting the state court's
        determinations. ............................................................ 8

        1.  The record supports the state habeas court's finding
            that Pye's family was uncooperative with the defense
            team. .......................................................................... 8

        2.  The state habeas court did not unreasonably
            "discount" Pye's affidavits. ....................................... 11

        3.  The panel's remaining critiques reflect the
            impermissible grading-papers approach. ................. 15

    B.  The panel's ultimate conclusion that the prejudice
        decision did not warrant deference also ignored reasons
        and evidence in support of that decision. ..................... 17

Conclusion ................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Consalvo v. Sec'y for the Dep't of Corr.*,
  664 F.3d 842 (11th Cir. 2011) ................................................... 12

*Mays v. Hines*,
  __ U.S. __, 141 S. Ct. 1145 (2021) .................................... *passim*

*Meders v. Warden*,
  911 F.3d 1335 (11th Cir. 2019) ......................................... *passim*

*Meders v. Ford*,
  140 S. Ct. 394 (2019) ..................................................... 6

*Porter v. McCollum*,
  558 U.S. 30, 130 S. Ct. 447 (2009) ........................................... 19

*Pye v. Chatman*,
  2018 WL 11184647 (N.D. Ga. Jan. 22, 2018) .......................... 19

*Pye v. State*,
  269 Ga. 779 (1998).............................................................2, 3, 4

*Rompilla v. Beard*,
  545 U.S. 374, 125 S. Ct. 2456 (2005) ....................................... 19

*Shinn v. Kayer*,
  __ U.S. __, 141 S. Ct. 517 (2020) ........................................16, 19

*Strickland v. Washington*,
  466 U.S. 668 (1984) ............................................................ 4, 17

*Waters v. Thomas*,
  46 F.3d 1506 (11th Cir. 1995) ...........................................10, 11

*Williams v. Taylor*,
  529 U.S. 362 (2000) ...........................................................15, 19

## Statutes

28 U.S.C. § 2254............................................................................ 1, 5

## STATEMENT OF ISSUE

Whether the panel's review under 28 U.S.C. § 2254 of the state court's determination that the petitioner failed to establish prejudice at the sentencing phase conflicts with United States Supreme Court and circuit precedent, where the panel declined to afford deference to that determination based on perceived "discounting" of mitigation evidence without addressing and rebutting "all the reasons and evidence" supporting the determination, and most importantly, without determining whether the state court's overall prejudice determination was unreasonable. *Mays v. Hines*, __ U.S. __, 141 S. Ct. 1145, 1149 (2021).

## STATEMENT OF THE CASE

### A. Facts of the Crimes

On November 16, 1993, Willie James Pye, Chester Adams, and Anthony Freeman robbed, kidnapped, gang-raped, and murdered Alicia Lynn Yarbrough with a .22 pistol. *Pye v. State*, 269 Ga. 779, 780 n.1, 782-783 (1998).

Alicia had been living with the father of her child and boyfriend, Charles Puckett, though she had previously been in a "sporadic romantic relationship" with Pye. *Id.* at 782. Puckett had signed the birth certificate of the child whom Pye claimed as his own. *Id.* Pye also heard that Puckett had recently collected a settlement check from a lawsuit. *Id.* Motivated by anger and greed, Pye set out to rob Puckett with Adams and Freeman. *Id.*

The three men drove to Griffin where "Pye bought a large, distinctive .22 pistol." *Id.* They then attended a party where a guest saw Pye with the gun. *Id.* Around midnight, Pye told the other two men, "it's time, let's do it," and they left the party and drove toward Puckett's home. *Id.* On arrival, "all of the men put on the ski masks which Pye had brought with him," and Pye and Adams put on gloves. *Id.* They "approached Puckett's house on foot." *Id.* Alicia was home alone with her infant child. *Id.* "Pye tried to open a window and [Alicia] saw him and screamed." *Id.*

"Pye ran around to the front door, kicked it in, and held [Alicia] at gunpoint." *Id.* "[T]here was no money in the house." *Id.* Still, the men took a ring and necklace from Alicia, kidnapped her, and left the baby home alone. *Id.*

"The men drove to a nearby motel where Pye rented a room using an alias." *Id.* There, they all took turns raping Alicia at gunpoint during which time Pye also exclaimed angrily that "[Alicia] let Puckett sign [his] baby's birth certificate." *Id.* "After attempting to eliminate their fingerprints from the motel room, the three men and [Alicia] left in Adams' car." *Id.* "Pye whispered [something] in Adams' ear and Adams turned off onto a dirt road." *Id.* Pye ordered Alicia out of the car, made her lie face down, and shot her three times, killing her." *Id.* "Pye tossed the gloves, masks," and .22 pistol from the car as they drove away. *Id.* A few hours after she was killed, the police found Alicia's body and recovered the tossed items. *Id.* at 783. "A hair found on one of the masks was consistent with [Alicia's] hair, and a ballistics expert determined that there was a 90 percent probability that a bullet found in [Alicia's] body had been fired by the .22." *Id.* Semen was also found in Alicia's body and "DNA taken from the semen matched Pye's DNA." *Id.* Later that day, Pye told the police that

3

"he had not seen [Alicia] in the last two weeks." *Id.* Freeman later confessed to the crimes. *Id.*

### B.  Proceedings Below

1.  Following a jury trial, Pye was found guilty of malice murder, kidnapping with bodily injury, armed robbery, burglary, and rape. D13-10:52; D.12-7:53. After the sentencing phase, the jury recommended a death sentence for the malice murder. *Pye*, 269 Ga. at 779-780, 780 n.1. The Georgia Supreme Court affirmed. *Id.* at 789.

2.  Pye filed his state habeas petition on February 4, 2000. D13-31:8; D14-25:1, 67. Relevant here, Pye raised a claim under *Strickland v. Washington*, 466 U.S. 668 (1984), that trial counsel (Johnny Mostiler) was ineffective during the penalty phase of his trial for failing to investigate and present mitigating evidence. D13-31:10-11, 13; D14-25:6-7, 11, 13, 15-22, 50-53. Following a three-day evidentiary hearing, arguments of counsel, post-hearing briefs, and proposed orders, the state habeas court denied Pye's petition. D20-40:1-76. The court determined that Pye failed to prove either deficient performance or that counsel's performance caused Pye prejudice. *Id.* at 41, 47, 54, 59, 72.

The state habeas court addressed each area Pye argued supported his ineffective-assistance claim: intellectual disability;

future dangerousness; brain damage, and difficult childhood. D20-40:60-67. The state habeas court found some of the evidence lacked credibility, some lacked a strong enough connection to the crime to carry great mitigating weight, and some was cumulative of evidence presented at trial. *Id.* The court also noted that there was "extensive evidence in aggravation" before the jury. The court concluded that either considered "individually or collectively" Pye's "habeas evidence" would not have created a "reasonable probability" of a different outcome at sentencing. *Id.* at 67.

The Georgia Supreme Court summarily denied Pye's application for a certificate of probable cause to appeal. D20-49:1.

3.  Pye's federal habeas petition raised his sentencing phase ineffective-assistance claim. D1:51-89, D23:52-91. In 2018, the district court denied relief and issued a certificate of appealability on Pye's ineffective-assistance-of-trial-counsel claims. D68:1, 102.

The panel granted habeas relief as to Pye's death sentence in a 54-page unpublished opinion. Slip Op. at 2, 53. The panel determined that the state court's rejection of Pye's ineffective-assistance claim was not entitled to deference under 28 U.S.C. § 2254 and, after *de novo* review, held that trial counsel's performance during the sentencing phase was deficient and caused Pye prejudice. *Id.* at 27-54.

5

## REASONS TO GRANT REHEARING EN BANC

**The panel's selective, grading-papers approach to its review of the state habeas court's prejudice decision under AEDPA conflicts with Supreme Court and circuit precedent.**

Under AEDPA, if a state court has considered and rejected a claim for habeas relief, "a federal court 'shall not' grant a writ of habeas corpus unless the earlier decision took an 'unreasonable' view of the facts or law." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting 28 U.S.C. § 2254). This means that "a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification ... beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

In explaining how to apply this highly deferential standard, the Supreme Court and this Court have repeatedly rejected a "grading papers" or "flyspecking" approach. *Meders v. Warden*, 911 F.3d 1335, 1350 (11th Cir.), *cert. denied sub nom. Meders v. Ford*, 140 S. Ct. 394 (2019). A federal court may not discard AEDPA deference based on a "line-by-line critique of the state court's reasoning" that highlights a selection of points the state court missed or got wrong (in the federal court's view). *Id.* Instead, "a federal court must carefully consider all the reasons and evidence supporting the state court's decision" because "there is no way to

hold that a decision was 'lacking in justification' without identifying—let alone rebutting—all of the justifications." *Mays*, 141 S. Ct. at 1149 (quoting *Richter*, 562 U.S. at 103. "Any other approach would allow a federal court to "essentially evaluat[e] the merits *de novo* by omitting inconvenient details from its analysis.'" *Id.* (quoting *Shinn v. Kayer*, __ U.S. __, 141 S. Ct. 517, 523 (2020)).

The panel decision took precisely that forbidden approach. In reviewing the state habeas court's prejudice decision, the panel was supposed to "consider[] the entire record" and determine only "whether the *[Georgia] court*, notwithstanding its substantial 'latitude to reasonably determine that a defendant has not shown prejudice,' still managed to blunder so badly that every fairminded jurist would disagree." *Mays*, 141 S. Ct. at 1149 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)) (cleaned up). But the panel instead ticked off a selective list of justifications the state court gave that the panel deemed unreasonable. In conflict with the Supreme Court's guidance, those individual conclusions each ignored other reasons or evidence that supported the state court's decision. And the panel's review as a whole—punching through AEDPA deference based on a selected list of errors rather than assessing the state court's ultimate prejudice holding based on the whole record—directly conflicts with the Supreme Court's and this

Court's required approach. Rehearing en banc is necessary to resolve the conflicts in authority the panel decision creates.

### A. The panel's selected unreasonableness conclusions ignore reasons and evidence supporting the state court's determinations.

The panel concluded that a handful of the state habeas court's justifications for its prejudice determination were unreasonable applications of federal law or determinations of fact. Each of the panel's conclusions, amounted to "pointing out evidence that was not mentioned in the state court's order or was not given the weight [the panel] feels it deserves" *Meders*, 911 F.3d at 1350 or "omitting inconvenient details" from the record that could support the state court's determinations.

#### 1. The record supports the state habeas court's finding that Pye's family was uncooperative with the defense team.

The state court found that "the evidence suggest[ed] [Pye's] family [was] unwilling[] to cooperate with trial counsel in [Pye's] defense," and that this supported a determination that counsel's failure to present additional mitigating evidence did not cause prejudice. D20-40:67. The panel found the court's "factual premise" unreasonable, noting that Dewey Yarborough's testimony that the family was uncooperative related only to the guilt phase

8

(Slip Op. at 41-42); that seven family members "testified at the penalty phase," which "conclusively disproves that the entire family was uncooperative," *id.* at 31, 42; and the family members' affidavit testimony that they would have "been willing to speak to the defense team before trial," *id.* at 31-36, 42.

This analysis failed to rebut "all of the justifications" in support of the state court's decision and instead "omitted inconvenient details from its analysis." *Mays,* 141 S. Ct. at 1149 (quotation marks omitted).

First, the fact that Pye's family members finally showed up to testify on his behalf at trial, is not "conclusive[]" proof that they would have in fact cooperated in every way with trial counsel. *See* Slip Op. at 31. Signing an affidavit in a later collateral proceeding does not mean they would have been willing to speak candidly about their family's alleged abusive behavior with trial counsel or testify about it at trial. In fact, none of Pye's family members testified live before the state habeas court even though most lived in Butts County (*see* D16-24:20, 31, 40, 43, 59, 67, 72, 85, 99, 106)—where the hearing took place—and a few others lived in the nearby counties of Spalding, Henry, and DeKalb (*see id.* at 75, 78, 82, 111). It was not unreasonable for the state court to have given less credibility to these affidavit statements than the panel

wanted to. *See Waters v. Thomas*, 46 F.3d 1506, 1513–14 (11th Cir. 1995).

Second, the panel omits relevant specifics of Yarborough's testimony. When he was questioned live before the state habeas court whether the family cooperated during the defense team's first meeting with them he testified "no" and explained that one of Pye's brothers stated: "He got his self into that, you know, he got his self, quote, this, he can get his self out of it." D14-41:85. Yarborough also testified that they did not have "family support" (D19-11:34) and that Pye's own mother would not come to the trial (D14-41:93). And contrary to the panel's suggestion, Yarborough did not qualify his live testimony before the state court as pertaining only to cooperation during the guilt phase: the panel extrapolated that qualification from Yarborough's deposition testimony, *see* Slip Op. at 31.

In short, had the panel "properly considered the entire record" and respected the state court's credibility determinations based on that record, as Supreme Court and circuit precedent require, *Mays*, 141 S. Ct. at 1149, it could not have concluded that the state court's finding about lack of cooperation had "no fair support in the record," Slip. Op. at 31.

### 2. The state habeas court did not unreasonably "discount" Pye's affidavits.

Pye filed 24 affidavits in support of his habeas claims, detailing a background he argued created a reasonable probability that the jury would have given him a sentence less than death. But the state court noted that it "has reviewed [Pye's] affidavit evidence with caution, including the affidavit evidence alleging abuse and deprivation of [Pye], where affidavit testimony is extensively relied upon." D20-40:66. The court gave reasons for doing so: this Court's own cautious view of such "artfully drafted" post-conviction filings, *Waters v. Thomas*, 46 F.3d 1506, 1513–14 and specific instances of inconsistency in several affidavits that warranted that overall caution as to this set of "artful drafting." D20-40:65. The panel deemed both the overall and individual credibility determinations unreasonable: it held that "the state habeas court unreasonably discounted all the mitigation affidavits" and "unreasonably characterized as 'misleading' several of the affidavits." Slip Op. 41-42.

The panel's analysis of these points disregards reasons and evidence that supported the state court's credibility determinations. First, the panel failed to address or rebut several inconsistencies in the affidavits that supported the state court's determination to treat the affidavits with "caution." A social

worker's affidavit testifying that he saw Pye's mother intoxicated while pregnant was later repudiated. D20-40:65. Moreover, the state court compared three of the affiants' testimony attacking Pye's guilt with either the affiant's pre-trial statements or trial testimony and found they were noticeably different and therefore "unreliable." *Id.* at 48-51, 66. These examples of inconsistences, combined with *Waters'* caution, were enough to support a generally "cautious" approach to the post-conviction affidavits even without the inconsistencies the panel challenged— particularly since "[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for the Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011).

In any event, the panel's conclusion that the state court "unreasonably characterized as 'misleading' several of the affidavits" fails to account for the full statements given or the deference due to state courts' credibility determinations. The panel reasoned that, contrary to the state court's determinations, the affidavits of Curtis, Ricky, and Lolla Mae Pye could *not* be read to say that they had not met with Mostiler before trial (when the record proved that they had, D20-40:65-66), but only that they had not talked about *mitigation evidence*. But reading each

affidavit as a whole, at the least, reasonable jurists could disagree on whether they assert that Mostiler never spoke with them before trial *at all*—especially given the fact that none of the affiants acknowledge any interaction with Mostiler. Each relevant passage is set out here, with emphasis on the language that could suggest that reading:

> *No one talked to me* about any of this *before Willie James's trial. Johnny Mostiler and his assistant Dewey know me.* Mr. Mostiler represented me before. *He didn't get in touch with me* or ask me any questions about the house Willie James was raised in or what he was like as a child. If he had, I would have said all the things I've said in this statement, and I would have testified to all these things if he had asked me to.

D16-24:83 (Affidavit of Curtis Pye) (emphasis added).

> The investigator, a man named *Dewey*, came by the house and talked to my dad about the charges against Willie. He didn't ask about Willie James and how he came up, or how we all were raised. Dewey never spoke to me about those things.
>
> * * *
>
> No one talked to me about my testimony before I went. *I never spoke to Mr. Mostiler about what to say, and he didn't meet with me or ask me any questions before my turn for testimony.*

> *Id.* at 99 (Affidavit of Ricky Pye).

> *No one took the time to talk to me about all (sic) anything before Willie's trial.* Nobody ask me all about how I grew up, how I came to be married to Ernest, and how I raised Willie and my other children. I would have been willing to talk

13

about my life with Willie James's lawyer or investigator, or with any doctor or psychologist working on his case. I would have told about all the things I described here, and testified to the jury about them if they wanted me to.

*Id.* at 97 (Affidavit of Lolla Mae Pye) (emphasis added).

Finally, the panel ignored an important *absence* of record evidence. In rejecting the state court's "caution" as to the affidavits, the panel asserted that "nearly every story in each account is corroborated by another affiant's account, and numerous details are corroborated by school records, Georgia Department of Corrections records, or other documentary evidence that habeas counsel introduced." Slip Op. at 10. Not quite: not a single independent record corroborates the abusive childhood that the affidavits describe. *See* DFACs (D15-12:1-89 thru D15-14:1-51); school records (D15-12:8-30; D16-11:48-60; D16-13:55-83; D16-14:2-9, 52-65; D16-15:1-24, 39-56; D16-16:1-23); DOC records (D15-16:7, 9, 11-17). *Id.* at 16. And this is especially critical because the abuse testimony, and not anything about Pye's intellectual capacity or poverty in childhood, was the state court primary concern with the affidavit evidence. *See* D20-40:18, 64-66.

Put simply, rather than consider "all the reasons and evidence supporting the state court's" credibility determination, the panel

14

substituted its own credibility finding based on a selective reading of the record, in direct conflict with binding precedent.

### 3. The panel's remaining critiques reflect the impermissible grading-papers approach.

Two of the panel's remaining bases for declining to defer to the state court's prejudice decision are particularly blatant violations of this Court's "no-grading-papers, anti-flyspecking rule," *Meders*, 911 F.3d at 1350.

First, in explaining why Pye's proffered mitigating evidence failed to establish prejudice, the state habeas court found "that there is little, if any, connection between Petitioner's impoverished background and the premeditated and horrendous crimes in this case." D20-40:66. The panel opined that "Supreme Court law clearly establishes, however, that no such connection is required." Slip Op. at 43. But even assuming that point is established by the panel's bare citation to *Williams v. Taylor*, 529 U.S. 362, 367-68, 395-98 (2000), the state court never claimed that a "connection" *is* required—it merely treated the lack thereof as a relevant point that cuts against a prejudice finding. And that reasoning is surely permissible under AEDPA: while an impoverished background is mitigating evidence it would not have been unreasonable for a jury to reject poverty as a link to gang rape and murder. *See, e.g.,*

*Shinn*, 141 S. Ct. at 524 (reversing grant of habeas relief based in part on federal court's failure to ask "whether a fairminded jurist could reach a different conclusion" as to whether there was a "causal connection between Kayer's mental impairment and the crime"). The panel's criticism of this point reflects a misguided search for and "readiness to attribute" error that is not compatible with this Court's instructions for AEDPA review. *See Meders*, 911 F.3d at 1350 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Second, in similar grading-papers fashion, the panel faults the state habeas court for not considering the alleged mitigating evidence in Pye's DOC records for a prior incarceration. Slip Op. at 45. But the state court never said it was not considering the DOC records in their entirety, D20-40:60-62, and this Court has "explicitly rejected the proposition that a state court decision … is not entitled to deference unless that court's opinion on its face 'shows its work' by explicitly mentioning 'all relevant circumstances' that the defendant argues in support of relief." *Meders*, 911 F.3d at 1350 (quoting *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1211 (11th Cir. 2013)).

16

## B. The panel's ultimate conclusion that the prejudice decision did not warrant deference also ignored reasons and evidence in support of that decision.

The improper cherry-picking analysis that pervaded the panel's individual unreasonableness determinations also infected its overall conclusion that the state court's ultimate prejudice decision did not warrant deference. Rather than review "the entire record,"—i.e., "all of the reasons and evidence supporting the state court's decision"—to determine whether to defer to the state court's conclusion that Pye suffered no prejudice in sentencing, the panel bypassed deference based only on the handful of determinations it deemed unreasonable. Slip Op. at 41-46.

Most critically, the panel entirely failed to address Pye's crime or the other evidence in aggravation presented by the State, instead focusing on only the mitigation determinations with which it found fault. *Id.* This was so despite the fact that the state court relied "especially" on the "extensive evidence presented in aggravation by the State during sentencing" when it concluded that Pye "failed to show that he was prejudiced under *Strickland* by trial counsel not presenting the additional details surrounding his upbringing." And that evidence was indeed "extensive." In addition to the highly aggravating nature of the crimes, the aggravating evidence (which the state court noted) included an

17

argument the summer before the murder during which Pye retrieved a gun, shot it into the air, and threatened a bystander, D20-40:57; D13-11:6-9; Pye striking a pregnant Alicia in the back with the same gun because he thought she was talking about his brother, D20-40:57; D13-11:6-9; Pye's arrest for entering an automobile and burglarizing the home of an 81-year-old woman, D20-40:57; D13-11:22; and testimony that Pye had a very bad reputation for violence in the Butts County community; D20-40:57; D13-11:25-26.

In the end, the state court properly considered the full array of evidence, mitigating, and aggravating, and concluded that when it was "considered individually or collectively, there is simply no reasonable probability that the result of the penalty phase of [Pye's] trial would have been different if the new evidence had been sujbmitted at trial." For a federal habeas court, "[a]ll that mattered was whether the [Georgia] court, notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays*, 141 S. Ct. at 1149 (2021) (quoting *Knowles*, 556 U.S. at 123). The panel's selective flyspecking of the state court's decision is not a permissible

application of that standard under the Supreme Court's and this

Court's precedents.[1]

---

[1] The panel relied on the prejudice determinations from prior Supreme Court decisions like *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456 (2005), and *Porter v. McCollum*, 558 U.S. 30, 130 S. Ct. 447 (2009). Slip Op. 41-46. But the Supreme Court has stressed that the "individualized" nature of the inquiry precludes reliance on "the weighing of aggravating and mitigating evidence in a prior published decision." *Shinn*, 141 S. Ct. at 526 (quoting *Zant v. Stephens*, 462 U. S. 862, 879, 103 S. Ct. 2733 (1983)). In any event, reasonable jurists clearly can disagree about whether the mitigating evidence here is analogous to the evidence in those cases, *see Pye v. Chatman*, No. 3:13-CV-0119-TCB, 2018 WL 11184647, at *23 (N.D. Ga. Jan. 22, 2018) (contrasting the evidence here with "significantly more compelling" and "simply horrific" evidence in *Porter*, *Wiggins*, and *Williams*).

## CONCLUSION

For the reasons set out above, this Court should grant

rehearing en banc.

Respectfully submitted.

Christopher M. Carr
  *Attorney General of Georgia*
/s/ *Sabrina D. Graham*
Sabrina D. Graham
Andrew A. Pinson
  *Solicitor General*
Beth A. Burton
  *Deputy Attorney General*
Sabrina D. Graham
  *Deputy Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3239
sgraham@law.ga.gov
Counsel for Respondent-Appellee

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 35(b)(2)(A) of the Federal Rules of Appellate Procedure because it contains 3,900 words as counted by the word-processing system used to prepare the document.

/s/ *Sabrina D. Graham*
Sabrina D. Graham

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2021, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.


/s/ *Sabrina D. Graham*
Sabrina D. Graham